The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANTHONY JONES

        Plaintiff,

v.

BRADKEN, INC.

        Defendant.

Case No. 12-CV-05926 BHS

DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

**NOTE ON MOTION CALENDAR:**
**November 29, 2013**

Defendant Bradken, Inc. ("Bradken") respectfully moves for summary judgment and seeks dismissal with prejudice of all claims asserted herein.

## I.      FACTUAL BACKGROUND

In his Complaint, Plaintiff alleges that Bradken discriminated against him and interfered with his right to leave under the federal Family and Medical Leave Act ("FMLA") when it terminated his employment while he was on approved intermittent FMLA leave. Because Mr. Jones does not dispute that he performed work for his thrift shop business during his leave, in violation of Bradken's lawful policy prohibiting outside employment while on leave, Mr. Jones cannot raise a genuine issue of material fact in support of his claims against Bradken.

Bradken is a producer of steel castings. Declaration of Deidra A. Nguyen in Support of Defendant's Motion for Summary Judgment ("Nguyen Decl."), Exh. A (Bennett Fors deposition transcript, hereinafter "Fors Dep.") 5:3-4. Bennett Fors is the Vice President of Operations for

Bradken's Tacoma facility.  Fors Dep. 4:21-22.  Mr. Fors reports to President Steve Gear.  Fors Dep. 6:17-18.  Allison Adam, Human Resource Manager, reports directly to Mr. Fors.  Fors Dep. 39:5-6.

### A.   From the Outset of His Bradken Employment, Plaintiff was On Notice that Bradken Prohibits Outside Employment While on a Leave of Absence

Bradken hired Plaintiff to the position of "grinder" on June 10, 2004.  Nguyen Decl., Exh. B (Anthony Jones deposition transcript, hereinafter "Jones Dep.") 113:21-22; Nguyen Decl., Exh. C (Employee Attendance Record, Exhibit 30 to Jones Dep.).

At the time Bradken hired Mr. Jones, Mr. Jones received a copy of the Atlas Casting Technology Employee Hand Book Revised 2003 ("2003 Handbook").  Jones Dep. 114:16-116:2; Nguyen Decl., Exh. D (2003 Handbook and acknowledgment, Exhibits 13 and 14 to Jones Dep.).  He understood that he was required to comply with the policies in the 2003 Handbook and accepted responsibility for familiarizing himself with the policies and regulations contained in the 2003 Handbook.  Jones Dep. 116:16-18.

The General Work Rules and Regulations section of the 2003 Handbook prohibited outside employment while on a leave of absence:

> GENERAL WORK RULES AND REGULATIONS
> Although there is no way to identify every possible violation of work rules or standards of conduct, the following is a partial list of infractions. Employees who fail to properly conduct themselves in accordance with the work rules are subject to immediate discharge, or lesser disciplinary action, depending upon the gravity of the offense as determined by the Company.
> ***
> OTHER EMPLOYMENT WHILE ON LEAVE OF ABSENCE: **Accepting employment elsewhere while on leave of absence from the Company unless properly authorized.**

Nguyen Decl., Exh. D at BRADKEN 000831, 833 (emphasis added).  The 2003 Handbook describes the two categories of leaves of absence available to Bradken employees: Leaves of Absence with Pay (Jury Duty Leave and Bereavement (Funeral Leave)) and Leaves of Absence Without Pay (Military Service or Reserve Training, Disability, Pregnancy Disability, Personal,

1  and Family and Medical).  *See id.* at BRADKEN 000819-820.  Vacations are addressed at a

2  different section of the 2003 Handbook, and vacation is not considered a leave of absence under

3  the 2003 Handbook.  *See id.* at BRADKEN 000818.

4        During the course of Plaintiff's Bradken employment, the employee handbook was

5  revised twice.  *See* Jones Dep. 127:12 - 128:3, 128:17-19.  The handbook in place at the time of

6  Mr. Jones's discharge was revised on December 23, 2011 ("2011 Handbook").  *See* Jones Dep.

7  174:10-14; Nguyen Decl., Exh. E (2011 Handbook, Exhibit 27 to Jones Dep.).  Like earlier

8  versions, the 2011 Handbook prohibited outside employment while on a leave of absence:

> General Work Rules
> Summarized below is a partial list of practices, which, if engaged in,
> would be detrimental to these objectives and which may lead to
> disciplinary action up to and including discharge.
>                                      ***
> <u>Failure to Return from an Approved Absence or Other Employment While
> on Leave of Absence:</u>
> Failure to report for work on the next work day after the end of an
> approved absence. **Accepting employment elsewhere while on leave of
> absence from the Company unless properly authorized.**

*Id.* at BRADKEN 000164-165 (emphasis added).

        Mr. Jones does not dispute that this policy prohibiting outside employment while on a

leave of absence applied to him throughout his Bradken employment:

> Q.     Do you have any reason to dispute that the rule at Bradken during
> your employment was that, if an employee accepted employment
> elsewhere while on a leave of absence, that employee was subject to
> discipline, up to and including discharge?
>
> A.   No.

Jones Dep. 121:3-8.

> Q.     If you're going on a leave of absence from Bradken –
>
> A.   Uh-huh.
>
> Q.   -- and you want to work somewhere else while you're on that leave of
> absence, you have to get authorization from Bradken; right?
>
> . . .

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 3
Case No. 12-CV-05926 BHS

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1    THE WITNESS:  Yes.

2  Jones Dep. 131:15-22.

3    Further, Mr. Jones does not dispute that this policy applied equally to all leaves of

4  absence, not just FMLA leave.  *See* Jones Dep. 122:12-18.  The 2011 Handbook recognizes only

5  the following as "leaves of absence": Bereavement Leave, Jury Duty, Leave Due to Serious

6  Health Condition (FMLA leave), Military Leave, and Personal Leave.  Nguyen Decl., Exh. E

7  (Exhibit 27 to Jones Dep.) at BRADKEN 000161-162.  The 2011 Handbook does not classify

8  vacations as leaves of absence.  Rather, vacations are a "benefit" addressed in a wholly separate

9  section of the 2011 Handbook and in a separate Vacation Policy making no reference to FMLA.

10  *See id.* at BRADKEN 000147, 169-170.

11    Bradken also separately communicated the policy prohibiting outside employment while

12  on leave to employees who requested personal leaves of absence.  For example, On April 28,

13  2010, approximately six months before he first took FMLA leave, Mr. Jones requested a

14  personal leave of absence because his son was expelled from school.  *See* Nguyen Decl., Exh. F

15  (Request for Personal Leave of Absence, Jones Dep. Exh. 22).  The form Mr. Jones completed to

16  request personal leave for this absence reminded him of Bradken's policy prohibiting outside

17  employment while on a leave of absence:

18    Q.    Can you read number 2 for the record?

19    A.    "The company reserves the right to terminate an employee who is
      working on another job while on a personal leave of absence."

20

21    . . .

22    Q.    Do you have any reason to dispute that that was the company's
      policy?

23    A.    No. . . .

24  Jones Dep. 137:14-23; Nguyen Decl., Exh. F.

25

26

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4**
Case No. 12-CV-05926 BHS

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

**B.      Plaintiff's Thrift Shop Business**

In 2006, Plaintiff began a thrift shop business conducting yard sales out of his garage. Jones Dep. 43:15-21.  In June of 2012, Mr. Jones and his fiancé Mary Le incorporated Nifty Thrifty Corp. ("Nifty Thrifty") and moved the thrift shop business out of their garage and into a store located at 926 72nd Street in Tacoma.  Nguyen Decl., Exh. G (Nifty Thrifty Corp. deposition transcript, hereinafter "Nifty Thrifty Dep.") 12:4-13; 19:9-17.

Nifty Thrifty claims not to have any employees.  Nifty Thrifty Dep. 30:11-19; Nguyen Decl., Exh. H (Exhibit 4 to Nifty Thrifty Dep.); Jones Dep. 41:11-21 (Nifty Thrifty does not report hours of work performed for the store to the Washington Department of Labor and Industries or to the Employment Security Department).  Although he does not pay himself wages for his work at Nifty Thrifty, Mr. Jones does receive income from the store.  For example, as compensation for his work at Nifty Thrifty, Mr. Jones uses income from the store to pay his and Ms. Le's personal bills.  *See* Jones Dep. 40:25 – 41:6; *see also* Nifty Thrifty Dep. 31:3-21.

Mr. Jones never informed Bradken about Nifty Thrifty.  *See* Jones Dep. 152:15-17.  Mr. Jones certainly never sought authorization to work at Nifty Thrifty while on a leave of absence:

> Q.      Did you ever ask anyone at Bradken if it was okay for you to work at Nifty Thrifty while you were on an FMLA leave from Bradken?
>
> A.      No.

Jones Dep. 154:13-16; *see also* Jones Dep. 131:24 – 132:1.

**C.      Plaintiff's First Use of Intermittent FMLA Leave in October 2010**

In or around October 2010, Plaintiff reported to Bradken's Human Resources Department that he had been diagnosed with gout, a condition that caused swelling in his foot, and requested intermittent FMLA leave.  *See* Jones Dep. 138:3-19; Nguyen Decl., Exh. I (2010 FMLA paperwork, Exhibit 23 to Jones Dep.).  In support of his leave request, Plaintiff submitted documentation from his medical provider indicating that his gout caused his foot to swell, during which time he was unable to put on his steel-toed work boots.  Plaintiff's medical provider

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1   estimated that Plaintiff would need to be absent from work 1 to 2 times in the ensuing year, for

2   an average of 1 to 2 weeks per episode, as a result of his condition.  Nguyen Decl., Exh. I.

3       Mr. Jones does not dispute that he received all of the FMLA leave he requested in 2010,

4   and he does not contend that Bradken interfered with his ability to take this FMLA leave.  Jones

5   Dep. 139:18-22, 140:15-17, 141:17-19; *see also* Jones Dep. 202:6 - 206:2  (Mr. Jones testifying

6   that Bradken provided him with the FMLA leave he requested and did not assess attendance

7   points for those absences); *see also* Nguyen Decl., Exh. C.

8       Unbeknownst to Bradken, and without Bradken's authorization, Mr. Jones continued to

9   work at Nifty Thrifty while he was on FMLA leave, opening his store much earlier than he

10  would on days when he worked his regular shift at Bradken.  *See* Jones Dep. 145:9-13, 148:16 –

11  149:2-16.

12      **D.      Plaintiff's Supervisor's First Report of Outside Employment While on Leave**

13      After Mr. Jones first began going on intermittent FMLA leave, Plaintiff's supervisor, Jim

14  Sanches, reported to Mr. Fors that Mr. Jones was on FMLA leave and that employees were

15  reporting that Mr. Jones was engaged in outside employment as a bouncer for a nightclub.  *See*

16  Fors Dep. 9:7-11.  Mr. Fors consulted with Human Resource Manager Ms. Adam about the

17  matter and concluded that if Mr. Jones was working as a bouncer outside of his Bradken shift,

18  the outside employment did not violate Bradken's policy prohibiting employment while on a

19  leave of absence.  Fors Dep. 10:14 – 11:4.  Because it appeared that Mr. Jones's working as a

20  bouncer (if indeed he was doing so) did not overlap with the hours he would have worked at

21  Bradken if not for his FMLA leave, Bradken took no further action regarding this report.  *See*

22  Fors Dep. 11:5-18.

23      **E.      Recertification of Plaintiff's Intermittent FMLA Leave**

24      In April of 2012, Plaintiff's request for intermittent FMLA leave was re-certified based

25  on medical documentation that was virtually identical to the documentation he had submitted in

26  support of his initial request.  *See* Nguyen Decl., Exh. J (2012 FMLA paperwork, Exhibit 24 to

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 6
Case No. 12-CV-05926 BHS

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

Jones Dep.).  Mr. Jones does not dispute that he received all of the FMLA leave he requested in connection with this re-certification.  *See* Jones Dep. 141:8-19; *see also* Jones Dep. 202:6 - 206:2 ; *see also* Nguyen Decl., Exh. C.

### F.   Plaintiff's Supervisor's Second Report of Outside Employment

In March or April of 2012, Mr. Sanches reported to Mr. Fors that Mr. Jones had a business on Portland Avenue in Tacoma, that Mr. Jones was off work for FMLA leave, and that Mr. Jones was working at his thrift shop, Nifty Thrifty, that day.  Fors Dep. 13:4-18.  Mr. Sanches reported that Mr. Jones was bragging to his Bradken coworkers that he was only maintaining his Bradken employment to get benefits and that he was earning more money running the Nifty Thrifty store.  *See* Fors Dep. 26:22 - 27:2, 5-9.

Mr. Fors responded by telling Mr. Sanches that he would drive to the Nifty Thrifty store to see if Mr. Jones was at Nifty Thrifty.  Fors Dep. 16:3-5.  Mr. Fors attempted to do so but could not find Mr. Jones or his business.  Fors Dep. 16:6-12.  Unable to confirm the allegation, Mr. Fors took no further action.  *See* Fors Dep. 16:13-18.

### G.   Plaintiff's Supervisor's Third Report of Outside Employment

On July 23, 2012, Mr. Sanches reported to Mr. Fors that the employees in Plaintiff's department had provided the cross street where Mr. Jones's business was located and that Mr. Jones was reportedly again working at Nifty Thrifty during his Bradken shift while on FMLA leave.  Fors Dep. 18:21 – 19:8, 23:24 – 24:4.  Again Mr. Sanches reported that Mr. Jones had been bragging that he was only maintaining his Bradken employment for the benefits and that he was earning more money running his thrift store business.  *See* Fors Dep. 26:22 - 27:2, 5-9.[1]

In response, Mr. Fors drove to the cross street where Mr. Jones's business was reportedly located and found the store.  *See* Fors Dep. 24:21 – 25:9.  When Mr. Fors arrived at the store, he

---

[1] Plaintiff's post-termination conduct is consistent with these statements.  After termination, Mr. Jones did not file for unemployment benefits. Jones Dep. 28:11-13.  Instead, he chose to work at Nifty Thrifty full time.  Jones Dep. 28:14-20; 44:8-13.  Thus, it appears that his intention all along was to work at Nifty Thrifty and continue his Bradken employment as long as he could solely to maintain benefits coverage.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7**
Case No. 12-CV-05926 BHS

1   saw Mr. Jones behind the desk and asked Mr. Jones to step outside to talk.  Fors Dep. 25:17-23.

2   Outside Nifty Thrifty, Mr. Fors and Mr. Jones had a discussion about whether Mr. Jones was

3   performing work at the store.  Fors Dep. 26:7-11.  They did not come to an agreement on the

4   matter, and Mr. Fors concluded the meeting by directing Mr. Jones to meet with Mr. Fors and

5   Ms. Adam so that Mr. Jones could tell his side of the story.  Fors Dep. 26:15-17.

6          **H.       Internal Bradken Meetings Prior to Meeting with Mr. Jones**

7                 Mr. Fors scheduled a meeting for July 27, 2012, with Mr. Jones and Ms. Adam to

8   determine whether Mr. Jones had violated Bradken's policy by working at Nifty Thrifty while on

9   FMLA leave.  Fors Dep. 33:9-14.  Prior to the July 27, 2012, meeting with Mr. Jones, Mr. Fors

10  met with Vice President Steve Gear to discuss the situation.  Fors. Dep. 34:24 – 35:7.  Mr. Gear

11  advised that if Mr. Fors and Ms. Adam determined that Mr. Jones was working at Nifty Thrifty

12  on the day of Mr. Fors's visit to the store, Mr. Gear approved terminating Mr. Jones.  Fors. Dep.

13  34:24 – 35:7, 45:5-9.

14                Prior to the July 27, 2012, meeting, Mr. Fors also met with Ms. Adam to discuss the

15  results of his visit to the Nifty Thrifty store and whether Mr. Jones's conduct violated Bradken's

16  policy.  Fors Dep. 49:25 – 50:11.  During that meeting, Ms. Adam consulted a book regarding

17  administering FMLA leave to determine whether the FMLA precluded Bradken from

18  terminating Mr. Jones while he was on a leave of absence.  Fors Dep. 50:8-23.  She concluded

19  from her research that Bradken could lawfully enforce its policy prohibiting outside employment

20  while on leave.  *Id*.

21         **I.       The July 27, 2012, Meeting with Mr. Jones**

22                The purpose of the July 27, 2012, meeting with Mr. Jones was to determine whether Mr.

23  Jones had been working at the Nifty Thrifty store while on a leave of absence.  Fors Dep. 59:18-

24  25.  If, at the end of the meeting, Mr. Fors and Ms. Adam determined that Mr. Jones had not

25  been working, Bradken would not have terminated his employment.  Fors Dep. 59:18-25.

26

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 8
Case No. 12-CV-05926 BHS

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1   During the meeting, Mr. Jones initially contended that he was only at Nifty Thrifty when

2   Mr. Fors visited because the store was his primary residence.  Fors Dep. 45:21-22.  However,

3   Mr. Jones recanted that story when Mr. Fors questioned whether he slept at the store and

4   received his mail there.  *See id*.

5   Mr. Jones then admitted that his duties at Nifty Thrifty included pricing items for sale and

6   negotiating with customers if they disputed an item's price.  Fors Dep. 31: 21 – 32:6.  Mr. Jones

7   also reported that he had to be at the store while his daughter was working and that if he had not

8   been there on the day that Mr. Fors visited, the store would not have been open.  Fors Dep.

9   45:13-18: 60:3-4; *see also* Jones Dep. 149:3-6.  Nevertheless, Mr. Jones maintained that he was

10  not working at Nifty Thrifty because he was not doing physical, manual work.  Fors. Dep. 46:2-

11  7.

12  After affording Mr. Jones a chance to tell his side of the story, Mr. Fors asked Mr. Jones

13  to leave Ms. Adam's office and proceeded to consult with Ms. Adam regarding what course to

14  take in response to Plaintiff's admissions.  Fors Dep. 46:19-22; 57:20-24.  Based on Mr. Fors's

15  observations on July 23 and the information gathered from Plaintiff during the July 27 meeting,

16  Mr. Fors and Ms. Adam concluded that Plaintiff was working at the thrift shop on July 23 while

17  on intermittent FMLA leave and that such conduct violated Bradken's policy prohibiting outside

18  employment while on leave.  *See id.*; *see also* Nguyen Decl., Exh. K (Bradken's answer to

19  Interrogatory No. 8 of Plaintiff's discovery requests).  Accordingly, Ms. Adam began preparing

20  an Employee Termination Notice.  *See* Fors Dep. 60:6-11.  The Employee Termination Notice

21  sets forth the "Reason for Termination" as follows: "Calling in FMLA to work another job. Per

22  the employee handbook 'Accepting employment elsewhere while on leave of absence from [the

23  Company] unless properly authorized' is subject to disciplinary action."  Nguyen Decl., Exh. L

24  (Employee Termination Notice, Jones Dep. Exh. 25).  Ultimately, the decision to terminate Mr.

25  Jones was a group decision by Steve Gear, Bennett Fors, and Allison Adam.  Fors Dep. 10:2-6.

26

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9**
Case No. 12-CV-05926 BHS

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1    Mr. Fors and Ms. Adam called Mr. Jones back into Ms. Adam's office to inform him of

2    their decision.  Ms. Adam read the Employee Termination Notice to Mr. Jones and asked him to

3    sign the notice to acknowledge his receipt, but Mr. Jones refused.  Fors Dep. 46:23 - 47:4; *see*

4    *also* Jones Dep. 165:14-16.

5    Mr. Fors is aware of no employees other than Mr. Jones having been disciplined for

6    working on a leave of absence.  Fors. Dep. 37:12-15.  Mr. Jones is also unaware of any other

7    employees being disciplined or terminated for working outside of Bradken while on a leave of

8    absence.  Jones Dep. 123:10-17.  Indeed, Mr. Jones is not aware of any other employee working

9    outside of Bradken while on a leave of absence.  Jones Dep. 125:12-15.

10                              **II.   DISCUSSION**

11    Plaintiff contends that Bradken violated the FMLA in three respects. First, he contends

12    that Bradken failed to provide "written notice detailing expectations and obligations for use of

13    FMLA benefits and fail[ed] to explain the consequences of failure to abide by them."

14    Complaint, ¶ 3.1.  Second, he contends that Bradken interfered with his use of FMLA leave, in

15    violation of 29 C.F.R. § 825.300(c)(1), by "failing to provide Plaintiff notice of any changes in

16    the requirements for utilizing benefits for FMLA leave." Complaint, ¶ 3.2; *see also* 29 C.F.R. §

17    825.300(c)(1) ("Employers shall provide written notice detailing the specific expectations and

18    obligations of the employee and explaining any consequences of a failure to meet these

19    obligations. . . . ").   Third, Plaintiff contends that Bradken's policy prohibiting outside

20    employment during leaves of absence "was discriminately focused on persons utilizing FMLA

21    leave" in violation of 29 C.F.R. § 825.216(e).  Complaint, ¶ 3.3.[2]

22

23

24

25    ───────────────
      [2] Bradken asserts several defenses that are not germane to this Motion.  For example, Plaintiff admitted to providing
      untrue statements in his Bradken employment application and in his discovery responses, which gives rise to the
26    after-acquired evidence doctrine.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -** 10
Case No. 12-CV-05926 BHS

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

As damages, Plaintiff seeks to recover economic damages such as back pay, front pay, loss of benefits, and "expenses associated with mitigation of damages"[3]; non-economic damages[4]; and liquidated damages.[5]

Bradken respectfully submits that Plaintiff cannot raise a genuine issue of material fact as to any of these "claims" or remedies.[6]

### A.    Summary Judgment Standard

Summary judgment should be granted when no genuine issue of material fact exists. Once a defendant "inform[s] the district court of the basis for its motion, the plaintiff must present "significant probative evidence tending to support [the] claim . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c); *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

Summary judgment is not disfavored. Quite to the contrary, it is an "integral part of the Federal Rules" designated for "every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1). This principle applies equally in employment discrimination cases, and the U.S. Supreme Court has reiterated that district courts should not "treat discrimination cases differently from other ultimate questions of fact." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148

---

[3] Out-of-pocket expenses are not recoverable under the FMLA. *See Nero v. Industrial Molding Corp.*, 167 F.3d 921, 930 (5th Cir. 1999) (citation omitted) ("We hold that Nero's damages under § 2617(a)(1)(A)(i)(I) are limited to an amount equal to the lost salary or wages, lost employment benefits, or any 'other compensation' that is indicative of a quid pro quo relationship between an employer and an employee. . . . Nero argues that the out-of-pocket expenses are mitigation expenses for the cost of finding another job and relocating his family. The out-of-pocket expenses are in the nature of consequential damages, and § 2617(a)(1) does not provide for recovery of general or consequential damages.").

[4] Non-economic damages are not recoverable under the FMLA. *See Washburn v. Gymboree Retail Stores, Inc.*, 2012 U.S. Dist. LEXIS 125378, at *19-20, n.9 (W.D. Wash. Sept. 4, 2012) ("[T]he FMLA, by its terms, allows an aggrieved employee to recover only actual monetary losses: 'for compensation and benefits lost "by reason of the violation," § 2617(a)(1)(A)(i)(I), for other monetary losses sustained "as a direct result of the violation," § 2617(a)(1)(A)(i)(II), and for "appropriate" equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B).' *Ragsdale*, 535 U.S. at 88. Claims for intangible losses like emotional distress, Opp. (Dkt. # 64) at 16, are not recoverable.") (citation omitted).

[5] Although not germane to this Motion, Bradken respectfully submits that Plaintiff is not entitled to liquidated damages in any event because Bradken acted in good faith and had reasonable grounds for believing that terminating Mr. Jones for engaging in outside employment was not a violation of the FMLA. 29 U.S.C. § 2617(a)(1)(A)(iii); *see also* Fors Dep. 58:8-23.

[6] As set forth below, some of Plaintiff's professed "claims" are not legally cognizable causes of action.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 11
Case No. 12-CV-05926 BHS

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

(2000). Thus, "[t]here is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011), *cert. denied*, 132 S. Ct. 513, 181 L. Ed. 2d 349 (2011); *see also Vatel v. Alliance of Auto. Mfrs.*, 627 F.3d 1245, 1249 (D.C. Cir. 2011).

## B.    Plaintiff Cannot Base an FMLA Claim on Allegedly Deficient Notice

Plaintiff's first and second causes of action are both premised on his contention that Bradken did not provide him proper notice of FMLA requirements (Complaint, ¶ 3.1) and any changes to such requirements (Complaint, ¶ 3.2) because Bradken did not remind him of the policy prohibiting outside employment at the time he went on FMLA leave.  In asserting these claims, Plaintiff assumes that the FMLA required Bradken to provide him with individualized notice of the policy prohibiting outside employment while on leave.  He is mistaken.

The FMLA does not require employers to provide individualized notice of policies prohibiting outside employment while on leave; providing notice of such a policy in an employee handbook is sufficient.  Moreover, failure to provide notice of FMLA rights does not constitute "interference" with such rights where the employee received all rights to which he or she was entitled irrespective of the notice.  Thus, because Mr. Jones readily admits that he was able to take all of the FMLA leave to which he was entitled, absent interference by Bradken and without receiving any attendance points, he cannot state a cause of action for allegedly deficient FMLA notice.

### 1.    A Handbook Policy Prohibiting Outside Employment While on Leave is Sufficient "Notice" Under the FMLA

The Department of Labor's regulations provide that employers must "provide written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations." 29 C.F.R. § 825.300(c)(1); *see also* Complaint, ¶¶ 3.1-3.2 (citing 29 C.F.R. § 825.300(c)(1)).  This regulation list seven specific

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1    categories of information that must be included in the notice.  *See* 29 C.F.R.  §  825.300(c)(1).
2    Plaintiff's first and section causes of action are premised on his contention that 29 C.F.R. §
3    825.300(c) required that Bradken provide him individualized notice of the handbook policy
4    prohibiting outside employment while on leave when Plaintiff first took FMLA leave in October
5    of 2010 and when he recertified his FMLA leave in April 2012.  *See* Complaint, ¶ 2.23
6    ("Bradken never oriented Mr. Jones to any requirement to avoid unauthorized employment while
7    on FMLA."); *see also* Complaint ¶¶ 3.1-3.2.  The FMLA imposes no such requirement.

8        Notably, 29 C.F.R. § 825.300(c)(1), the regulation Plaintiff cites in support of his first
9    and second causes of action, does <u>not</u> require specific notice of a policy prohibiting outside
10   employment while on leave. *See id.*; *see also* 29 C.F.R. § 825.300(c)(2) ("The notice of rights
11   and responsibilities may include other information . . . but it is not required to do so.").
12   Moreover, courts have specifically held that the FMLA does not require employers to provide
13   individualized notice of a policy prohibiting outside employment while on leave.  *See, e.g.*,
14   *Edwards v. Sam's West, Inc.*, 2011 U.S. Dist. LEXIS 101324, at *8-9 (D. Utah Sept. 6, 2011)
15   ("[T]he regulation does not require specific notice of a policy prohibiting outside employment
16   while on leave.").

17       Rather, merely maintaining a handbook policy prohibiting outside employment while on
18   leave is perfectly lawful, even if the employer does not remind employees of the policy when
19   they take leave or otherwise provide notice of the policy at the time of FMLA leave.  The court
20   in *Edwards v. Sam's West, Inc.*, addressing precisely this issue, found that employees taking
21   FMLA leave are not entitled to "individualized notice" of handbook policies prohibiting outside
22   employment while on leave:

23           [T]here is no dispute that Sam's Club terminated Plaintiff for violating its
             Leave of Absence policy by working in outside employment while on
24           leave. Plaintiff, however, argues that he was not given proper individual
             notice of Sam's Club's policy against outside employment when his leave
25           of absence was approved. But none of the regulatory notice provisions
             cited by Plaintiff require Sam's Club to provide Plaintiff with
26           "individualized notice" when he was "approved for his FMLA leave."

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -** 13
Case No. 12-CV-05926 BHS

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1    *Edwards*, 2011 U.S. Dist. LEXIS 101324, at *8-9.

2        Similarly, in *Fults v. Shiroki N. Am., Inc.*, 2008 U.S. Dist. LEXIS 33097 (M.D. Tenn.

3   Apr. 22, 2008), the court rejected an employee's contention that notice was deficient where the

4   policy prohibiting outside employment was not contained within the FMLA section of the

5   handbook:

> 6    It is undisputed that Defendant's policy states that accepting other
> employment or going into business while on leave is a ground for
> 7    termination. Plaintiff contends that Defendant did not provide adequate
> notice of this section of the manual as it related to FMLA leave. Plaintiff
> 8    has acknowledged receipt of a copy of the Manual which contained the
> relevant information. Docket No. 26, P 3. The specific information at issue
> 9    here was included in a section headed "Leaves of Absence." *Id.*, P 4. The
> Court finds that the provision at issue, even if it was not in the section of
> 10   the Manual specifically devoted to the FMLA (as Plaintiff argues),
> provided adequate notice of the consequences of accepting other
> 11   employment or going into business while on leaves of absence.

12   *Fults*, 2008 U.S. Dist. LEXIS 33097, at *6-7.

13        In this case, there is no genuine issue of material fact that Bradken's handbook contained

14   a written policy prohibiting outside employment while on a leave of absence and that Mr. Jones

15   received a copy of such handbook.  *See* Nguyen Decl., Exh. E.  Moreover, although not rqeuried

16   to do so, Bradken provided Mr. Jones individualized notice of the policy in connection with his

17   April 28, 2010, Request for Personal Leave of Absence, fewer than six months before he first

18   took FMLA leave.  *See* Nguyen Decl., Exh. F.  Mr. Jones therefore cannot create a genuine issue

19   of material fact as to whether he was provided sufficient notice of the policy, and his first and

20   second claims for relief must be dismissed with prejudice.

21          **2.    Any Deficiencies in FMLA Notice are Irrelevant Where an Employee
Received FMLA Leave Notwithstanding Allegedly Deficient Notice**

22

23        Even if Plaintiff could create a genuine issue of material fact as to whether Bradken

24   provided sufficient notice of the policy underlying his termination (which he cannot), he cannot

25   state a claim for insufficient notice because he indisputably received all of the FMLA leave he

26   requested.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 14
Case No. 12-CV-05926 BHS

"Failure to follow the notice requirements set forth in [29 C.F.R. § 825.300] may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights" (29 C.F.R. § 825.300(e)), but only if the failure to follow notice requirements actually affected the employee's FMLA leave:

> [P]laintiff argues that defendant's failure to notify her of her rights under FMLA constitutes improper interference. Plaintiff is incorrect. Failure to notify an employee of FMLA procedures does not, in and of itself, constitute an interference with the exercise of those rights. . . . **[T]he right to notice under the act is not an independent right giving rise to suit where failure to notify in no way affected the employee's leave.** [citations omitted] . . . Assuming arguendo that plaintiff did not receive proper notice, she fails to make out a claim for interference based on lack of notice, because she fails to explain how the lack of notice affected her ability to take leave.

*Geromanos v. Columbia Univ.*, 322 F. Supp. 2d 420, 430-31 (S.D.N.Y. 2004) (emphasis added). Therefore, Plaintiff cannot state a claim under the FMLA for any technical deficiency in the FMLA notice Bradken provided because he readily admits that he received all of the FMLA he requested. *See, e.g.*, Jones Dep. 202:6 - 206:2 (Mr. Jones testifying that Bradken provided him with the FMLA leave he requested and did not assess attendance points for those absences). Plaintiff's first and second causes of action therefore fail as a matter of law.

**C.    There is No Genuine Issue of Material Fact that Bradken's Policy Prohibiting Outside Employment Does Not Discriminate Against Individuals Using FMLA Leave**

In his third cause of action, Plaintiff contends that Bradken's policy prohibiting outside employment during leaves of absence "was discriminately focused on persons utilizing FMLA leave" in violation of 29 C.F.R. § 825.216(e).  Complaint, ¶ 3.3.

As a threshold matter, this claim is belied by Plaintiff's admission that he is not aware of any evidence that Bradken's policy applied differently to FMLA leaves:

> Q.    Do you believe that this policy regarding other employment while on a leave of absence applies differently to different types of leaves of absence?
>
> A.    Repeat that question, please.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -** 15
Case No. 12-CV-05926 BHS

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1            Q.     Do you mind reading it back.

2            (Question was read back.)

3            A.  Not that I'm aware of.

4    Jones Dep. 122:12-18.  To Plaintiff's knowledge, no other Bradken employee has ever worked

5    outside of Bradken while on a leave of absence:

6            Q.     So far as you know, you are the only Bradken employee who
     performed work outside of Bradken while on a Bradken leave of absence;
7    is that correct?

8            A.     As far as I know, yes.

9    Jones Dep. 125: 12-15.  Plaintiff is therefore unaware of any other employees being disciplined

10   or terminated for working outside of Bradken while on a leave of absence:

11           Q.     Are you aware of any Bradken employees who were terminated for
     taking a leave of absence and working another job while on a leave of
12   absence?

13           A.     Not that I recall, no.

14           Q.     Are you aware of any other Bradken employees who were
     disciplined for working another job while on a leave of absence from
15   Bradken?

16           A.     No, I'm not aware.

17   Jones Dep. 123:10-17.  On these undisputed facts, Plaintiff cannot create a genuine issue of

18   material fact as to whether Bradken's policy prohibiting outside employment during leaves of

19   absence "was discriminately focused on persons utilizing FMLA leave" in violation of 29 C.F.R.

20   § 825.216(e).  Complaint, ¶ 3.3.

21          To the extent that Plaintiff's third cause of action alleges that Bradken's policy applied

22   only to FMLA leave and not to other types of leaves of absence, Plaintiff offers no facts to

23   support such a contention.  Indeed, all of the facts are to the contrary.  By its plain language, the

24   policy prohibits accepting employment elsewhere "while on leave of absence," not from

25   accepting outside employment while on an <u>FMLA</u> leave of absence.  *See* Nguyen Decl., Exh. E

26   at BRADKEN 000164-165.  Bradken's administration of the policy confirms that it is applicable

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 16
Case No. 12-CV-05926 BHS

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1    to all leaves of absence.  For example, when Mr. Jones completed a "Request for Personal Leave

2    of Absence" form on April 28, 2010, for a <u>personal</u> leave of absence <u>not</u> governed by the FMLA,

3    Bradken reminded Mr. Jones of its policy prohibiting outside employment while on leave: "The

4    Company reserves the right to terminate an employee who is working on another job while on a

5    personal leave of absence."  Nguyen Decl., Exh. F; Jones Dep. 137:14-23.  Thus, there is no

6    dispute that the policy prohibiting outside employment applied equally to FMLA leaves and to

7    personal leaves not governed by the FMLA.

8         To the extent that Plaintiff's third cause of action is premised on the notion that

9    Bradken's policy "discriminately focused" on FMLA leave because Bradken prohibited outside

10   employment only during leaves of absence, but did not prohibit moonlighting generally, such a

11   distinction does not violate the FMLA.  It is perfectly lawful for employers to allow outside

12   employment generally and prohibit outside employment only during leaves of absence.  So long

13   as the policy does not distinguish between FMLA and other types of leave, a policy prohibiting

14   outside employment only while on a leave of absence does not violate the FMLA.  *See The*

15   *Family and Medical Leave Act* 311 (ABA Section of Labor and Employment Law et al. eds.,

16   BNA Books) (Supp. 2011) (Nguyen Decl., Exh. N) ("Section 825.216(e) of the revised

17   Regulations provide that an employer is permitted to have a uniform policy governing outside

18   employment, provided it is applicable to employees on non-FMLA leave as well as employees

19   on FMLA leave.") (footnote omitted).

20        Although there is no specific Ninth Circuit precedent, two other circuits addressing this

21   issue have held that an employer does not violate the FMLA if it refuses to reinstate an employee

22   who has violated a uniformly-applied company rule prohibiting outside employment while on

23   leave.  *See Pharakhone v. Nissan N. Am. Inc.*, 324 F.3d 405, 407-08 (6th Cir. 2003); *Sepe v.*

24   *McDonnell Douglas Corp.*, 176 F.3d 1113, 1115-16 (8th Cir. 1999), *cert. denied*, 528 U.S. 1062,

25   120 S. Ct. 616, 145 L. Ed. 2d 510.

26

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 17
Case No. 12-CV-05926 BHS

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1       In *Pharakhone v. Nissan N. Am., Inc.*, Pharakhone took FMLA leave for the birth of his

2   baby and to manage his wife's restaurant while she recovered from childbirth.   Nissan's

3   employee handbook prohibited unauthorized work while on leave.   *Pharakhone*, 324 F.3d at 406.

4   Nissan discovered that Pharakhone worked at the restaurant during his FMLA leave and

5   terminated him for violating the handbook policy prohibiting outside work while on leave.   *Id.* at

6   407.   The district court granted summary judgment for Nissan, finding no genuine issue of

7   material fact that Pharakhone had violated Nissan's policy against outside employment while on

8   leave.   The Sixth Circuit affirmed:

9           The record before us admits of only one answer to the question why Mr.
10          Pharakhone lost his job. It is undisputed that Nissan had a documented
            policy prohibiting "unauthorized work for personal gain while on leave." .
11          . . Mr. Pharakhone nevertheless elected to work at the restaurant
            throughout his leave. Having discovered that Pharakhone was violating
12          company policy, Nissan fired him - and there is no evidence that it had an
            ulterior motive for doing so. The undisputed evidence thus compels a
13          finding that Mr. Pharakhone was discharged because he violated Nissan's
            no-work policy, and not because he took FMLA leave.

14   *Id.* at 408.

15      Similarly, in *Sepe v. McDonnell Douglas Corp.*, the plaintiff started an excavating

16   business with his wife while he was still employed with McDonnell Douglas.   Like Bradken,

17   McDonnell Douglas did not prohibit employees from working a second job, but it did prohibit

18   employees from "accepting other employment . . . while on authorized leave of absence."   *Sepe*,

19   176 F.3d. at 1114.   In 1995, Sepe took FMLA leave, and McDonnell Douglas learned that he

20   continued to operate the excavating business while on leave after a McDonnell Douglas

21   investigation team videotaped him working for his excavating business.   Based on this discovery,

22   McDonnell Douglas fired Sepe.   *Id.* at 1115.   McDonnell Douglas did not allege that the leave

23   was fraudulently obtained; rather, it terminated Sepe for violating the policy prohibiting outside

24   employment while on a leave of absence.   *See id.* The district court granted summary judgment

25   for the employer on Sepe's FMLA retaliation claim, and the Eighth Circuit affirmed:

26

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -** 18
Case No. 12-CV-05926 BHS

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

> We agree with the district court that Sepe was fired because he had violated the terms of the CBA and not in retaliation for having exercised any rights under the FMLA. Sepe does not dispute that he engaged in "other employment" by working at J&K while on leave. Thus, McDonnell Douglas was within its . . . to fire Sepe after he engaged in such employment without written permission to do so.

*Id.* at 1115-16.

District courts too have upheld the termination of employees for working while on FMLA leave in violation of an employer policy prohibiting outside employment while on leave. For example, in *Stanley v. Volvo Parts N. Am.*, 2008 U.S. Dist. LEXIS 46841 (S.D. Ohio June 17, 2008), the employer learned from a private investigator that an employee was engaged in exotic dancing while on FMLA leave. The employer terminated the employee for violating a collective bargaining agreement provision prohibiting outside employment while on FMLA leave, and the court granted summary judgment for the employer:

> Upon consideration of the evidence, viewed in a light most favorable to Plaintiff, the Court concludes Plaintiff is unable to establish her interference claims. The evidence shows Plaintiff's termination resulted not from her taking FMLA leave but from Defendant's application of Article 9, § 8 of the CBA, the prohibition against outside employment while on FMLA leave. It was Plaintiff's behavior in engaging, in what Defendant honestly believed to be, outside employment which resulted in her termination. . . .

*Stanley*, 2008 U.S. Dist. LEXIS 46841, at *10-11. Notably, the *Stanley* court found irrelevant the plaintiff's contention that her exotic dancer activities did not actually amount to outside employment because there was no dispute as to the employer's genuine belief on the matter:

> This conclusion is not altered by Plaintiff's assertion she was not employed by the Boulevard and, instead, engaged in these activities for relaxation and personal enjoyment. An employer does not violate the FMLA by terminating an employee if the employer held an honest belief based on particularized facts that the employee abused that leave. [citation omitted] Currently, the evidence demonstrates Defendant held an honest belief based on particularized facts that Plaintiff was engaging in outside employment at the time it terminated her employment. . . .

*Stanley*, 2008 U.S. Dist. LEXIS 46841, at *11.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 19
Case No. 12-CV-05926 BHS

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1    Similarly, the court in *Edwards v. Sam's West, Inc.*, granted summary judgment to the

2    employer on facts remarkably similar to those here.  In *Edwards*, the plaintiff began working for

3    Sam's Club in 1995.  *Edwards*, 2011 U.S. Dist. LEXIS 101324, at *3.  Sam's Club's policy

4    prohibited outside employment while on a leave of absence.  *Id.*  In his employment application,

5    he disclosed his part-time self-employment as a tax and mortgage consultant, which he had been

6    doing since 1982.  *Id.*  In 2008, Edwards went on FMLA leave and continued to perform work

7    for his consultant business during the leave. *Id.* at 4.  While Edwards contended that it was well

8    known to his co-workers that he had an outside consultant business, he admitted that he did not

9    inform anyone at Sam's Club that he would continue to do work for the business while on

10   FMLA and did not seek approval to do so.  *Id.*  Sam's Club confronted Edwards with evidence

11   that he had performed work for the business while on FMLA leave, and Edwards admitted that

12   he had been working for his business while on FMLA leave.  *Id.* at *4-5.  Sam's Club therefore

13   terminated his employment for violating the policy prohibiting outside employment while on

14   leave. *Id.* at *5.

15   The court granted Sam's Club's motion for summary judgment, finding no dispute that

16   Sam's Club terminated Edwards for violating the policy prohibiting outside employment while

17   on leave and not for taking FMLA leave:

18          The rights to FMLA leave and reinstatement are not absolute. An
            employee must abide by the employer's rule against outside employment
19          while on leave. *Pharakhone*, 324 F.3d at 407-08. In this case, the
            undisputed evidentiary record establishes that Sam's Club had a
20          documented policy prohibiting outside employment while on leave,
            Plaintiff engaged in outside employment while on leave, and Sam's Club
21          terminated Plaintiff after discovering that he had engaged in outside
            employment while on leave. Plaintiff has presented no evidence that Sam's
22          Club terminated him because he took FMLA leave or even that his taking
            of leave was a negative factor in Sam's Club's decision to terminate him.
23          Sam's Club had the right to enforce its policy without violating the FMLA.
            Accordingly, the court grants Sam's Club's motion for summary
24          judgment.

25   *Id.* at *12.

26

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 20
Case No. 12-CV-05926 BHS

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1    Consistent with *Pharakhone*, *Sepe*, *Stanley*, and *Edwards*, the Court should grant

2    summary judgment to Bradken and dismiss with prejudice Plaintiff's claim that Bradken's policy

3    prohibiting outside employment during leaves of absence "was discriminately focused on

4    persons utilizing FMLA leave" in violation of 29 C.F.R. § 825.216(e).  Complaint, ¶ 3.3.  There

5    is no genuine issue of material fact that Mr. Jones took intermittent FMLA leave repeatedly

6    beginning in 2010 and never experienced any negative consequences for such leave.  *See, e.g.*,

7    Jones Dep. 139:18-22, 140:15-17, 141:17-19, 202:6 - 206:2; Nguyen Decl., Exh. C.  There is no

8    genuine issue of material fact that Bradken terminated Mr. Jones only when Bradken learned that

9    he had engaged in unauthorized outside employment while on a leave of absence.  *See, e.g.*,

10   Nguyen Decl., Exh. K.  There is no genuine issue of material fact that Bradken's policy

11   prohibiting outside employment while on leave applied uniformly to all types of leaves, not just

12   FMLA.  *See, e.g.*, Jones Dep. 131:15-22; Nguyen Decl., Exh. E, F.  There is no genuine issue of

13   material fact that Mr. Jones did not obtain authorization from Bradken to work at his thrift shop

14   while on leave.  *See, e.g.*, Jones Dep. 154:13-16.  On these undisputed facts, Plaintiff's claim that

15   his termination violates the FMLA plainly fails.

16   **D.    To the Extent that Plaintiff Intends to Pursue a Retaliation Claim, Which He
17           Did Not Plead, Such Claim Would Likewise Be Subject to Summary
             Judgment**

18   Plaintiff's Complaint is devoid of any claim or allegation that he was retaliated against

19   for taking FMLA leave.    To the extent that Plaintiff hopes to pursue such a claim

20   notwithstanding his failure to plead it, Mr. Jones cannot raise a genuine issue of material fact as

21   to whether his termination constitutes retaliation for taking FMLA leave.

22   The FMLA provides employees with two substantive rights: (1) the right to use a certain

23   amount of leave for protected reasons, and (2) the right to return to his or her job or an equivalent

24   job after using protected leave.  *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112, 1122

25   (9th Cir. 2001); 29 U.S.C. §§ 2612(a), 2614(a).  The FMLA recognizes two separate claims for

26   violation of its provisions: (1) interference claims, which are premised on the notion that the

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 21
Case No. 12-CV-05926 BHS

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1   employer burdened or denied substantive statutory rights to which an employee is entitled under

2   29 U.S.C. § 2615(a)(1); and (2) retaliation claims, which are premised on an employer allegedly

3   taking adverse action against an employee for instituting or participating in FMLA proceedings

4   or inquiries.  *Bachelder*, 259 F.3d at 1124.[7]  As Mr. Jones contends that Bradken burdened his

5   right to reinstatement, and not that he experienced adverse action for engaging in FMLA

6   proceedings, his third claim is for interference and not retaliation.  The *McDonnell Douglas*

7   burden-shifting framework does not apply to FMLA interference claims.  *Id.* at 1125.  Rather, to

8   sustain a claim for FMLA interference, Plaintiff must prove by a preponderance of the evidence

9   that his taking of FMLA-protected leave constituted a negative factor in the decision to terminate

10  him.  *Id.*

11          Mr. Jones cannot meet this burden because "[a]lthough the FMLA create[s] a statutory

12  right to reinstatement after taking FMLA leave, this right is not without limits."  *Sanders v. City*

13  *of Newport*, 657 F.3d 772, 778 (9th Cir. 2011).  The Department of Labor has interpreted this

14  part of the statute in various regulations that recognize limitations on an employee's right to

15  reinstatement following FMLA leave.  *Id.*; *see also* 29 C.F.R. § 825.216 (Limitations on an

16  employee's right to reinstatement).  One recognized limitation on an employee's right to

17  reinstatement following FMLA leave is an employee's violation of an employer's policy

18  prohibiting outside employment:

19              **If the employer has a uniformly-applied policy governing outside or**
                **supplemental employment, such a policy may continue to apply to an**
20              **employee while on FMLA leave.**  An employer which does not have such
                a policy may not deny benefits to which an employee is entitled under
21              FMLA on this basis unless the FMLA leave was fraudulently obtained as
                in paragraph (d) of this section.
22

23  ─────────────
    [7] *Gutierrez v. Grant County*, 2011 U.S. Dist. LEXIS 46692, at *16-17 (E.D. Wash. 2011), highlights the distinction:
24  "Plaintiff claims her job was eliminated because she was on FMLA leave. Plaintiff registered her opposition to that
    adverse employment action, however that opposition could not have resulted in retaliation or discrimination because
25  by the time she registered it, the adverse employment action had already taken place in that her job had been
    eliminated. Whether that adverse employment action was unlawful under the FMLA remains to be determined.
    Plaintiff's claim is solely an interference claim under the FMLA and her FMLA retaliation claim must be dismissed.
26  If Plaintiff's FMLA rights have been violated, she will be made whole through her interference claim."

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 22
Case No. 12-CV-05926 BHS

29 C.F.R. § 825.216(e) (emphasis added).  The Department of Labor has also issued an opinion

letter recognizing this limitation on an employee's right to reinstatement:

> In your letter, you ask whether an employee, who is eligible for FMLA leave for a qualifying reason, is entitled to the leave even though during the leave the employee intends to continue to work at his second job. The answer to your question will be determined by whether the employer has a uniformly-applied policy governing outside or supplemental employment. **For example, the employer may have an established policy that prohibits outside employment while an employee is on a paid or unpaid leave of absence where benefits may be maintained.** If so, the employee on FMLA leave would be subject to that policy as it is our position that an employee on FMLA leave continues to have an employment relationship with the employer. Consequently, the employer's employment policies continue to apply to an employee on FMLA leave in the same manner as they would apply to an employee who continues to work, or is absent while on some other form of leave. (See 29 U.S.C. § 2614(a)(3)(B) of the Act and 29 C.F.R. §§ 825.216 and 825.312(h) of the Regulations.)

United States Dep't of Labor, Op. Letter, FMLA 106, 1999 (Nguyen Decl., Exh. M). (emphasis

added).  The FMLA permits employers to maintain a policy prohibiting outside employment

while on leave, and refuse to reinstate employees who violate such policy, "provided [that the

policy] is applicable to employees on non-FMLA leave as well as employees on FMLA leave."

*The Family and Medical Leave Act* 311 (ABA Section of Labor and Employment Law et al. eds.,

BNA Books) (Supp. 2011) (Nguyen Decl., Exh. N).  Here, there is no dispute that Bradken's

policy applied to all types of leave.  *See* Nguyen Decl., Exh. E, F; *see also* Jones Dep. 122:12-18,

131:15-22.

Moreover, an employee that violates an employer policy prohibiting outside employment

while on leave cannot, as a matter of law, prove that taking of FMLA-protected leave constituted

a "negative factor" in his termination.  *Pharakhone*, 324 F.3d at 408 ("To prevail on his FMLA

claim, Mr. Pharakhone would have had to demonstrate that his taking of leave was a 'negative

factor' in Nissan's decision to discharge him. This he has not done - and none of the disputed

facts can assist him in doing so.").  That is particularly true here, where Mr. Jones repeatedly

took intermittent FMLA leave in the two years prior to his termination and experienced an

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 23
Case No. 12-CV-05926 BHS

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1    adverse employment action only when Bradken discovered that he was engaged in unauthorized

2    outside employment while on leave.  *See* Jones Dep. 139:18-22, 140:15-17, 141:17-19, 202:6 -

3    206:2.  There is no genuine issue of material fact that Bradken prohibits outside employment

4    while on leave, Mr. Jones violated that policy, and Bradken terminated him for such violation.

5    On this record, Mr. Jones cannot sustain a retaliation or interference claim under the FMLA.

6                                  **III.    CONCLUSION**

7            For the foregoing reasons, Bradken respectfully urges the Court to dismiss Plaintiff's

8    claims with prejudice and enter judgment in favor of Bradken.

9            Respectfully submitted this 6th day of November, 2013.

10

11

12                                          */s/ Ryan P. Hammond*
                                           Ryan P. Hammond, WSBA #38888
13                                          rhammond@littler.com
                                           Deidra A. Nguyen, WSBA #38034
14                                          danguyen@littler.com
                                           LITTLER MENDELSON, P.C.
15                                          One Union Square
                                           600 University Street, Suite 3200
16                                          Seattle, WA  98101.3122
                                           Phone:        206.623.3300
17                                          Fax:          206.447.6965

18                                          Attorneys for Defendant

19

20

21

22

23

24

25

26

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 24
Case No. 12-CV-05926 BHS

1

**CERTIFICATE OF SERVICE**

2      I am a resident of the State of Washington, over the age of eighteen years, and not a party

3  to the within action.  My business address is One Union Square, 600 University Street, Ste. 3200,

4  Seattle, WA  98101.   I hereby certify that on November 6, 2013, I electronically filed the

5  foregoing **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of the

6  Court using the CM/ECF system which will send notification of such filing to The Honorable

7  Benjamin H. Settle and to the following:

8

9                     Richard H. Wooster, WSBA #13752
                      rich@kjwmlaw.com
10                    Patrick Hollister, WSBA #41492
                      pat@kjwmlaw.com
11                    KRAM AND WOOSTER PS
                      1901 South "I" Street
12                    Tacoma, WA 98405
                      Attorneys for Plaintiff

13  and I hereby certify that I have mailed by United States Postal Service the document to the

14  following non CM/ECF participants:

15          Not Applicable

16      I declare under penalty of perjury under the laws of the State of Washington that the

17  above is true and correct.  Executed on November 6, 2013, at Seattle, Washington.

18

19                     /s/ Scott Callahan
                       Scott Callahan

20

21  Firmwide:123728098.3 078009.1001

22

23

24

25

26

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** - 25
Case No. 12-CV-05926 BHS

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300